**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
LAUREN DILLARD,

                            Plaintiff,        **Case No.**:

     -against-                              **COMPLAINT**

NYP HOLDINGS, INC.,
                                             **Jury Demand**

                            Defendant.
------------------------------------------------------X

Plaintiff LAUREN DILLARD ("Plaintiff" or "Ms. Dillard"), by and through her attorneys, FISHER TAUBENFELD LLP, alleges the following against Defendant NYP HOLDINGS, INC. ("Defendant" or the "Company"):

## NATURE OF THE ACTION

1. This action arises under diversity of citizenship and is filed pursuant to New York State Human Rights Law ("State Law" or "NYSHRL"), and the Administrative Code of the City of New York § 8-101 *et seq.* ("City Law" or "NYCHRL").

2. Defendant discriminated against Plaintiff because of her disabilities and retaliated against her because she requested reasonable accommodations.

3. Defendant knowingly violated Plaintiff's rights under State and City Law, and such actions were committed intentionally and/or willfully with knowledge that Plaintiff would be economically injured.

4. Damages and other legal relief are sought pursuant to State and City Law.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is proper under 28 U.S.C § 1332, which confers original jurisdiction upon this Court for actions in which there is a diversity of citizenship.

6. Plaintiff is a resident of the State of Maryland.

7. Defendant is incorporated in the State of Delaware and maintains a principal place of business in New York at 1211 Avenue of the Americas, New York, New York 10036.

8. The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

9. Venue is proper in this District because Defendant conducts business in this District, and acts and/or omissions giving rise to the claims alleged herein took place in this district.

10. Pursuant to §8-502 (c) of the City Law, Plaintiff served a copy of this Complaint on the City of New York Commission on Human Rights and on the City of New York Corporation Counsel.

## PARTIES

### *Plaintiff*

11. At all relevant times, Plaintiff was employed by Defendant in New York City.

12. Plaintiff was at all times a "person" within the meaning of City Law, protected from discrimination and retaliation.

13. Plaintiff was at all times an "employee" within the meaning of State Law, protected from discrimination and retaliation.

14. Plaintiff was an individual who had a disability (concussion, anxiety and depression) under State and City Law.

### *Defendant*

15. Defendant was Plaintiff's employer.

16. Defendant is a media company which maintains a principal place of business at

1211 Avenue of the Americas, New York, NY, 10036.

17. At all relevant times hereto, Defendant has continuously been doing business in the State and City of New York and has continuously employed more than four (4) people, and accordingly is an "employer" within the definition of State and City Law.

## FACTUAL ALLEGATIONS

18. Plaintiff worked for Defendant as a video editor for 3 years.

19. Plaintiff was a fully remote employee.

20. Plaintiff was a top performing employee and her metrics for turnaround time were strong compared to other editors in similar positions.

21. For part of her employment with Defendant, Plaintiff worked at a division called Page Six.

22. Plaintiff's manager at Page Six was Jenna Yaches.

23. When out of the office, Yaches relied on Plaintiff to take on many responsibilities that were usually given to producers and management, such as interviewing and vetting junior editor and freelance candidates and overseeing Page Six video.

24. On September 6, 2022, Plaintiff was struck by a car traveling 30 miles per hour while riding her bike, resulting in a concussion and a major leg injury.

25. Although Plaintiff was back at work only two days after the accident to help cover important breaking news, she continued to experience issues related to her concussion including cognitive impairment, vision problems, and migraines.

26. Defendant was aware of Plaintiff's accident and resulting disability.

27. Around this time, Plaintiff also informed Yaches about ongoing mental health issues she was experiencing, including anxiety and depression.

28. Senior Editor Alex Depinto, on behalf of Defendant's management, contacted Plaintiff to recommend that she commence short-term disability, which Plaintiff took starting October 3rd.

29. The Company's Human Resources Department informed Plaintiff that Defendant's leave policy required Plaintiff to begin leave the same day she put in her request, and it was mandatory that she refrain from any work or communication with her manager for the entirety of her leave period. This resulted in additional work and potential embarrassment and confusion for Yaches.

30. Upon Plaintiff's return from leave on October 26th, Defendant significantly increased her workload and changed her job description. Yaches also changed her attitude towards Plaintiff.

31. Yaches removed Plaintiff from the projects she was most proficient at and qualified for. Plaintiff's once-diverse workflow was limited to only highly time-sensitive, high-stress projects.

32. While Plaintiff's workload before her leave consisted of primarily long-form series cuts, celebrity interviews, and motion graphics, after her leave she was responsible almost entirely for back-to-back rapid cuts.

33. Upon information and belief, the department still received as many long-form projects as before, but they were assigned to a different editor.

34. Yaches also pressured Plaintiff into working several last-minute double shifts, once just two days after her accident, despite Plaintiff vocalizing concern about her health and well-being.

35. Yaches trivialized Plaintiff's injury and discouraged her from taking sick days.

36. Plaintiff learned from several colleagues that, when explaining the reason for Plaintiff's absence to her colleagues, Yaches downplayed the severity of Plaintiff's accident.

37. Yaches omitted crucial details to Mr. Warren Cohen, Vice President of Video at the New York Post, calling the accident a "bike mishap," and failing to mention that Plaintiff had been hit by a car.

38. Yaches developed a pattern of bullying and criticizing Plaintiff in front of Page Six co-workers and the broader New York Post team, including fabricating a pattern of performance issues.

39. Plaintiff experienced challenges related to her disability and discussed potential accommodations with Yaches during a one-on-one Zoom meeting on March 13, 2023. Plaintiff asked Yaches about making changes that could help with her increased workload. Plaintiff requested 5-minute breaks from editing a few times per day and the ability to take lunch before 2:00 p.m. Yaches initially agreed.

40. However, due to the intensity of her workload, Plaintiff was unable to actually take her requested breaks or early lunches. Plaintiff would often give notice of when she was planning to take lunch hours beforehand, but when the time came, her coworkers and Yaches would ask her to stay and do "one more cut" or additional tasks before she took lunch.

41. In March 2023, Plaintiff confided in her former manager, Melissa Smith, about the difficulties she was experiencing at Page Six. Smith told Plaintiff that she would discuss with Warren Cohen Plaintiff's transfer to another team.

42. A week after this conversation, Smith sent Plaintiff a Zoom meeting invite with five-minutes notice. This meeting included only Smith, Yaches, and Plaintiff.

43. During this meeting, Yaches surprised Plaintiff with an extensive accounting of

alleged performance issues.

44. Plaintiff countered the false allegations of poor performance and requested documentation so she could prepare an adequate response.

45. Yaches never provided this documentation.

46. In April 2023, Plaintiff transferred back to the New York Post team, reporting to Smith.

47. However, Plaintiff continued to experience retaliation.

48. Smith began to make major issues out of relatively small or isolated errors Plaintiff made.

49. These minor mistakes were inevitable given the high pace and volume of the team's work, and Plaintiff observed other coworkers making similar errors without commensurate censure.

50. Plaintiff experienced significant anxiety due to Defendant's heightened scrutiny, which occurred on a daily basis.

51. On June 29, 2023, Plaintiff had a performance review, which Mr. Cohen observed.

52. Plaintiff's review included many of the minor complaints propounded about her performance, including (a) that she failed for 7 minutes to respond to a request while she was in the bathroom and (b) that she occasionally kept her camera off in Zoom meetings.

53. On July 2, 2023, Mr. Cohen delivered a four-week Performance Improvement Plan (PIP) to Plaintiff.

54. On Plaintiff's last video editing project for Defendants, Plaintiff made an error resulting in a video being posted to the site without requisite censorship. Plaintiff's supervisor,

Melissa Jesperson, had told Plaintiff that she had reviewed the video, and Jesperson approved it to be posted. A deputy editor then posted the uncensored video over the weekend of August 5th. Though this would not have been a fireable offense for another employee, Defendants used this as a reason to terminate Plaintiff, despite Jesperson's approval.

55. On August 8, 2023, Defendant terminated Plaintiff.

56. Defendant's proffered reason for terminating Plaintiff (i.e., alleged performance issues) was a pretext for unlawful discrimination based on disability and in retaliation for Plaintiff's request for accommodations.

## FIRST CAUSE OF ACTION

**(Discrimination Based on Disability
in Violation of State Law)**

57. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

58. Plaintiff is a person with disabilities, including a concussion, anxiety, and depression.

59. By the acts and practices described herein, Defendant willfully violated State Law by discriminating against Plaintiff because of her disabilities.

60. As a proximate result of Defendant's unlawful conduct, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

61. As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## SECOND CAUSE OF ACTION

### (Retaliation under State Law)

62. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

63. Plaintiff engaged in protected activity when she asked for a reasonable accommodation for her disabilities.

64. By the acts and practices described herein, Defendant willfully violated State Law by retaliating against Plaintiff because she asked for a reasonable accommodation.

65. As a proximate result of Defendant's unlawful acts, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

66. As a proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## THIRD CAUSE OF ACTION

### (Failure to Accommodate in violation of State Law)

67. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

68. Plaintiff is a person with disabilities, including a concussion, anxiety, and depression.

69. By the acts and practices described herein, Defendant willfully violated State Law by failing to provide Plaintiff with a reasonable accommodation.

70. As a proximate result of Defendant's unlawful acts, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

71. As a proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## FOURTH CAUSE OF ACTION

**(Discrimination Based on Disability in Violation of City Law)**

72. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

73. Plaintiff is a person with disabilities, including a concussion, anxiety, and depression.

74. Defendant willfully violated City Law by discriminating against Plaintiff based on her disabilities.

75. As a proximate result of Defendant's unlawful acts, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

76. As a proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## FIFTH CAUSE OF ACTION

### (Retaliation
### In Violation of City Law)

77. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

78. Plaintiff engaged in protected activity when she asked for a reasonable accommodation for her disabilities.

79. By the acts and practices described herein, Defendant willfully violated City Law by retaliating against Plaintiff because she asked for a reasonable accommodation.

80. As a proximate result of Defendant's unlawful acts, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

81. As a proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## SIXTH CAUSE OF ACTION

### (Failure to Accommodate
### in violation of City Law)

82. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

83. Plaintiff is a person with disabilities, including a concussion, anxiety, and depression.

84. By the acts and practices described herein, Defendant willfully violated City Law by failing to provide Plaintiff with a reasonable accommodation.

85. As a proximate result of Defendant's unlawful acts, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

86. As a proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

### SEVENTH CAUSE OF ACTION

**(Failure to Engage in a Cooperative Dialogue
In Violation of City Law)**

87. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

88. By the acts and practices described above, Defendant unlawfully failed to engage in a cooperative dialogue regarding Plaintiff's request for accommodations in violation of City Law.

89. Defendant knew that its actions constituted unlawful discrimination and acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

90. As a proximate result of Defendant's unlawful acts, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

91. As a proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment:

1. Compensatory Damages in an amount to be determined at trial;

2. Prejudgment Interest;

3. Back Pay, Front Pay, and damages for all employment benefits Plaintiff would have received but for the discriminatory and retaliatory acts and practices of Defendant;

4. Mental anguish and pain and suffering damages sustained as a result of Defendant's discriminatory and retaliatory conduct;

5. Punitive Damages;

6. Plaintiff's costs and attorneys' fees; and

7. All other relief the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated: February 3, 2025

Respectfully submitted,

**FISHER TAUBENFELD LLP**

By: _____
Liane Fisher, Esq.
*Attorneys for Plaintiff*
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
Fax: (212) 505-2001